## SUPREME COURT.

### Dexter B. Britton agt. Charles B. Phillips.

To sustain an action for damages for breach of a contract to sell land, it must appear that the parties' minds met in the proposed sale.

Where the proposed vendor submitted a proposition to sell the land in controversy—such proposition being in the form of a letter addressed from a banking house in Wall street to the proposed purchaser, containing at the bottom, "the above proposition is made for two days; after that subject to negotiation," it must appear on the part of the proposed vendee who brings his action to recover damages for breach of such alleged contract, that he accepted said proposition in writing, within the time specified, and brought to the knowledge of the proposed vendor such acceptance.

A mere deposit in the U. S. post-office (postage not prepaid) of a letter accepting such proposition, addressed to the proposed vendor, is insufficient.

It is not due diligence to excuse such deposit in the post-office, to prove that the proposed vendee was unable to find the proposed vendor within the time, where it also appears that the latter made no inquiries for the former at the banking house from which the proposition in form was addressed.

In case of an attachment issued under sections 227, *et seq.* of the Code, and also in case of a judgment recovered in such attachment suit, where it appeared that the judgment had been executed and paid, notwithstanding an appeal pending, the appellate court, under section 330 of the Code, have power to, and will order on reversal of the judgment below, a restitution to the appellant of the moneys so

collected, notwithstanding such reversal is accompanied by an order granting a new trial, and notwithstanding the attachment is so pending.

In such case, the restitution is effected by ordering a deposit of the moneys into court, to abide the result of the new trial, and subject to the lien of the attachment.

*New York General Term, September,* 1862.

INGRAHAM, *P. J.,* CLERKE and LEONARD, *Justices.*

THE appellant was the owner of five lots on the north side of Thirty-fifth street, between Second and Third avenues, on which were erected five brown stone houses, three stories high. The referee found the value of this property to be $34,000. On the premises were incumbrances amounting to $22,500, viz: $3,500 on each house and lot, and a $5,000 mortgage on the five. Besides, there was on them a mortgage for $10,000, given as security for some mortgages on the appellant's Chicago property, which liability was not absolute at the time.

The appellant desired to sell this city property, and he applied to John S. Christie, real estate broker, who introduced him to the respondent, and thereupon a negotiation ensued whereby the respondent sought to exchange with the appellant for the houses, in part payment, stock of the American Kaolin Company, $52,000, which value the appellant claimed they represented, so that money could be raised on it, of twenty-five cents on the dollar, *i. e.* in all $13,000, and also some other securities of the same kind. The referee found these securities never had any market value, although he found that there was no fraud on the part of the respondent. After proposals backwards and forwards, the appellant wrote a letter to respondent, in which he used these words :

" I will vend to you the five houses, about the title of which there will be no doubt, subject to the present mortgage incumbrances. I will take the Kaolin stock as per your offer ; I will take the Beaver Dam mortgages and five hundred dollars in cash, if you wish to close the contract,"

&c., &c. " The above proposition is made for two days; after that, subject to negotiations."

In that letter the appellant made use of expressions which indicated either that he considered these securities equal to cash at the rate proposed, or that his mind had been imbued with that idea.

This was delivered to respondent 11th of December, 1858. The only acceptance of that proposition by respondent was by a letter addressed to appellant, and deposited in the New York city post-office, postage not prepaid, on the 13th December, 1858, and which was not shown to have been received by appellant, and which the appellant positively denied ever having received.

On the 14th December, 1858, the appellant declined further connection with the matter. The respondent brought an action for a specific performance and for damages. The referee awarded him $1,100 damages, and from that report this appeal was taken.

D. McMahon, *for appellant.*
A. R. Dyett, *for respondent.*

By the court, Clerke, P. Justice. It is not pretended in the negotiations between the parties in this action, that they arrived at any final understanding until after the defendant wrote the letter dated 11th December, 1858. In this letter he proposes to the plaintiff to sell him the five houses in Thirty-fifth street, on certain terms specifically set forth; and in a postscript he says: " The above proposition is made for two days; after that, subject to negotiation." Of course this letter, as the writer says in the postscript, contains nothing more than a proposition. It was not in itself an acceptance of previous propositions made by the plaintiff; there were negotiations indeed between the parties, and whatever offers may have been made on the part of plaintiff, this letter was no adoption of them, but it

was merely a statement of terms which required a positive acceptance by the plaintiff before it could become an agreement binding on either.

Where is the evidence of an acceptance by the plaintiff?

He states that " he received defendant's letter on Saturday evening, December 11, and on Monday evening he sent a written communication to defendant, accepting his offer. He kept no copy of it; he sent the communication to defendant through the New York general post-office, inclosed in an envelope addressed to defendant, New York; he could not say whether the postage was paid." The defendant swears positively that he never received it. There is, therefore, not only no evidence that the acceptance was even received by the defendant, but direct and unmistakable evidence that it was not received by him. The plaintiff did not even exhibit ordinary diligence to comply with the requirement contained in the postscript to the letter of the 11th December. That letter was dated at the banking house of Bliss, Williams & Co., No. 4 Wall street; the plaintiff made no inquiries for the defendant at that place; never even called there; if he did, his acceptance probably would have reached the defendant in time. Mr. Williams, one of the firm of Bliss, Williams & Co., states " that the defendant transacted business at their house; was there, received his letters there, and did his correspondence there; had negotiations there with people about this property." If the plaintiff, then, failed to have the acceptance properly served on the defendant, he may blame his own want of care and diligence. It is, at all events, clear that no court would be justified in deciding that the defendant received the acceptance, and although the referee reports in favor of the plaintiff, he does not expressly find as a matter of fact that the defendant did receive it.

The judgment should be reversed, and a new trial ordered; costs to abide event.

Britton agt. Phillips.

On the settlement of the decree in this cause, the following question of practice arose : It appeared that pending the appeal, the plaintiff below went on and executed the decree, and collected the amount of the judgment appealed from. This collection was arrived at in this form : In the suit originally, an attachment was issued pursuant to sections 227, *et seq.* of the Code, and a levy made on certain moneys of the defendant in a banker's hands. After recovery of the judgment below, by proceedings in the name of the sheriff, the plaintiff below, under sections 232, 238 of of the Code, compelled the payment of the judgment.

A motion was now made for restitution, under section 330 of the Code ; such restitution to be incorporated in the decree reversing the judgment below. Affidavits were read by the respondent, on the settlement of the decree of reversal, tending to show that after the attachment was levied, the appellant assigned over all his interest in the moneys in the banker's hands, to a third party, and that the appellant, after such assignment, disclaimed all interest therein. The appellant, however, introduced affidavits tending to show that the assignment in question was given as collateral security for moneys loaned, and that since the satisfaction of the judgment below, he had become re-instated with an interest in the moneys levied on, greater than the sum so levied on. Argument was heard on this point, before Justices INGRAHAM, LEONARD and PECKHAM.

Mr. McMAHON, *for motion*, made the following points :

I. After the respondent has satisfied his attachment and his judgment out of the moneys of the appellant pending the appeal, he ought to be estopped from setting up that such moneys were not the moneys of the appellant.

.He collected *them as such* on the erroneous judgment. No pretence is set up that any one has called him to account for the moneys thus collected.

To allow him now to plead in answer to the right of the

appellant to have restitution, that he, the respondent, committed a greater outrage by collecting his judgment of somebody's else moneys, would be an evasion of all legal principles.

II. Section 330 of the Code provides that when the judgment is reversed or modified, the appellate court may make restitution of property and rights lost by the judgment.

III. We now claim that the moneys collected by the respondent, under his erroneous judgment, should be restored to the appellant, by being re-paid over to him. It was his money, on deposit with his banker, and should be restored to him.

IV. At any rate, the right of deposit and control of the appellant's moneys were affected and enjoined by the erroneous judgment reversed, and we submit that it is the right of the appellant to have said moneys so collected by the respondent, deposited in court or the Trust Company, to the credit of this cause.

V. The appellant, in his affidavits on the settlement of the order, has shown conclusively that the moneys so levied on by the respondent's proceedings, were his, the appellant's, own funds. We submit, therefore, that there can be no legal objection to a restoration of those funds to the proper custody, *i. e.* the appellant himself, or the Trust Company.

VI. Certainly, the respondent who has been decided to have no cause of action, has no right to retain those moneys.

Mr. DYETT, *opposed*, made the following points. The only authority for the motion is section 330 of the Code, and it should be denied, with costs.

I. This motion should be made at special term. This general term is not an " appellate court." It is the same tribunal that rendered the judgment.

II. The section in question applies to *all appeals*, and

only authorizes restitution where a judgment is reversed, *and it stops there.*

This does not apply to the case of a reversal, accompanied by the granting of a new trial with costs to abide the event.

In such a case restitution is not proper. (*Estas* agt. *Baldwin,* 9 *How.,* 80´; *opinion,* 81.)

The true remedy is by an award of restitution on the record of reversal, (2 *Wend.,* 158,) or by action of assumpsit, (6 *Cow.,* 297.) But this can be only on a final reversal, which was the case in both the cases just cited. It cannot be where a new trial is ordered in the same court, on a case made, for there is no final judgment.

III. But in this case an attachment was issued, *and is still in force.*

The plaintiff, therefore, cannot have restitution. The money, if taken from the plaintiff, must go to the sheriff.

*a.* There is no authority for ordering the plaintiff to pay it to the sheriff, (and see next point.)

*b.* The sheriff should make that motion.

*c.* There is no authority for any order *paying the money into court.*

If it goes to anybody, it goes to the sheriff. If, as we show, restitution cannot be ordered because of the attachment, that is an end of the motion. The court should not make novel orders, or entertain these " fancy applications." There is no necessity of ordering *the money paid into court.*

IV. In the case of an attachment, the plaintiff cannot have any restitution of the property attached, unless he recover final judgment in his favor, (*Code,* § 239,) and until that time the defendant has no control over it.

V. But our affidavits show that the defendant has all along disclaimed any title to the money attached, and that a third party claims it as his, and both claim the money to have been assigned to such third party before the at-

tachment was issued, which was February 26th, 1860, (see
our affidavits.)

We have been obliged to give, and have given, a bond
of indemnity to the sheriff and to the banker, against the
claims of Wright.

The defendant does not now claim the money as his. He
claims (fols. 2 and 3 of his affidavit) only a resulting trust
after his assignments to two persons in whom the legal
title to the money is; and at the end of his affidavit pre-
tends to make the application as the attorney in fact of the
last assignee. Such third party does not personally join
in the application, and our bond of indemnity is still in
force.

But if such assignees were both before the court, the
court should not entertain such an application by a third
party, and there is no precedent for it; and although we
show conclusively, that the assignee had all along claimed
the assignment to have been made to Wright previous to
the attachment, (compelling us to indemnify,) for the pur-
pose of preventing us getting the money, he now claims
the assigment to have been made afterwards, for the pur-
pose of getting it back.

The motion should be denied, with costs.

By the court, INGRAHAM, Justice. We think the order
should direct the moneys to be paid into court, to abide
event.

Thereupon, a decree was settled by the court, which,
after providing for the reversal of the judgment below,
contained the following provision, to wit:

" And it appearing to the court that, notwithstanding
the appeal herein, the respondent executed and collected
the amount of the judgment below, costs and sheriff's fees, to
wit, the sum of $1,855.23, therefore it is further adjudged,
ordered and decreed, that the said respondent make resti-
tution to the said appellant, by paying into court, to the

chamberlain of the city of New York, within ten days after service of this decree on him or his attorney, the said sum of $1,855.23, with interest from the date of said collection, by the said respondent, to abide the order of this court after such new trial is had."